May it please the court. My name is Tim Sandifer. I represent the Griswolds in this matter. The central issue in this case is when did the statute of limitations begin to run. The statute of limitations began to run in May of 2005 when the Griswolds were granted the building permit which finalized the city's determination on their building permit application. Until that point, the permit could have been denied. The terms of the permit could have been changed. Anything could have happened before there was a final determination. For there to be a final determination, the permit must have been granted. Senator, let me ask you a slightly different question. As I read the complaint and understand the theory that the pleadings proceeded on, the injury that is claimed on all of the counts, including the two as to which the district court made a statute of limitations finding, the injury was claimed as to voting rights, a burden on Griswold's right to vote on that assessment. That's correct. With one exception, Your Honor, and that is one of the equal protection claims alleges a categorization of my claims as opposed to others. We can get to that in a second. But if the injury claim is to voting rights, then why is it that any claim is ripe because the ‑‑ whether the voting ‑‑ whether he will ever be denied a right to vote is contingent on a number of things happening. I mean, that being a design process initiated, that being a decision to have an assessment ballot, et cetera. No, actually, Your Honor, Griswold's case is ripe because they've already been deprived of a ‑‑ I know you say that. I mean, in the ‑‑ I hear the words. I don't see that they've been deprived of a thing yet. There hasn't been an election. There may never be an election. There may never be an assessment. And until such time as there is, we don't know that they've actually been deprived of anything. Not so, Your Honor. The property ownership in California consists of a bundle of rights, and one of those rights is the right to participate in the assessment process. Sure. I understand that. And the deprivation, the voting rights waiver, is recorded with the county recorder's office and is disclosed to any future purchaser of the property. So one of those sticks of property ownership in California has already been taken out of the bundle that the Griswolds have. No future incident is required to finalize that injury. No, if you haven't pursued an injury with the property document, that's not being pursued on appeal. So the asserted injury is to the right to vote. And I just come back to the same question. Nobody knows yet whether there will ever – the right to vote will ever accrue. Well, Your Honor, this is – as a motion to dismiss, we're entitled to all the facts being construed in our favor. And we do allege in the complaint that this waiver runs with the land and decreases the elements of property ownership at the Griswolds. But you're not pursuing that. That's – that is – I – there's no place in here in the briefs that the diminution of the property value is pursued. But I can say – Your Honor, be that as it may, I think that the central question really is whether or not there must be an election first. Now, there's only one case on this issue, and that's Lawson, which is cited by both sides. But Lawson is a very different situation, because in Lawson we're talking about an election where there's a primary, there's a general, there's polling places. That doesn't happen in assessment elections under Proposition 218. What happens is the city determines who is eligible to participate in the election and mails ballots to them. The Griswolds will never receive such a ballot because of this. Instead, the city is going to collect these. Then isn't that the time for them to squawk? No, Your Honor, because the city collects these and counts them as yes votes. And then it very well, if it collects enough yes votes, never even hold the election and cast these by proxy. Then why can't they squawk at that point? Well, perhaps they could, but there's nothing precipitating them. I mean, it seems pretty clear that in a normal election context, the time for one to dispute the electoral process and a deprivation of one person's right to vote is at the time that happens. In a normal election process, that may be the case, but it's not the case under Proposition 218. And the reason for that is because it's a very different kind of election where the participants are selected by the government entity itself, and they have been deprived of the opportunity to participate already. And any future purchaser of the property has been deprived of that right. So one of the elements of their ownership of the property has already been taken from them in May of 2005. Counsel? Yes. I take it that what the assessment is going to be for is bearing electric lines, putting in sidewalks, that sort of thing? Among other things, yes, Your Honor. Tell a couple of the other things concretely. Well, the document itself lists them out in an attachment, the waiver document itself. Tell me concretely and practically. People have wells and septic tanks, and it's about hooking them up to city water and sewer, or if it's about paving their street, if it's unpaved, or putting in sidewalks. Yes, it's paving sidewalks. It's like putting a park a mile away. Curb and gutter. No, it's, as you said, it's the paving, sidewalk, curbs and gutters, underground utilities, matters, things like that, which are normally paid for through assessments. Now, my next question is, does the municipality always do that, or is it something where they debate it in the city council, and sometimes they do it, sometimes they don't? How certain or likely is it that at some point they will go ahead with the sidewalks and the underground utilities? We honestly don't know, Your Honor. We're only on a motion to dismiss, and we've conducted no discovery. So we don't know what the city's specific plans are. That, however, isn't, as Judge Rahmer was saying, with regard to the injury. That doesn't matter with regard to whether or not the Griswolds have been deprived of their opportunity to participate in that, or any purchaser of the property. And this is, we point out to the police. This is kind of like if you had no present, I guess the flip side, if you had no present intention to dig a gold mine, but somebody took away your mining rights. If this were a purely hypothetical matter of that sort, we might have something different. What we're talking about, though, is a systematic city mechanism for depriving people of their opportunity to participate in a procedure that is routinely employed by cities throughout California, and a right that is specifically guaranteed under the California Constitution. The way I read this, and what's troubling me about it, is it looks like if you build a big improvement on your house, little one, they don't bother you. Build a big one, over $75,000, you've got to pay for sidewalks and underground utilities. But if the city's not ready to put them in yet, then all you have to do is agree that if there's ever an assessment district and they assess you for the underground utilities, you're stuck with it. You don't get to vote against it. You essentially have to vote yes up to, in this case, $115,000. And this isn't in the record. As I said, we haven't done discovery, but I recently have been contacted by another property owner in Carlsbad who has been disclosed. She just bought the property. In the disclosure documents was another version of one of these agreements. And she's been notified she has to pay $20,000 or something like this for local improvements. So we know that the city does these sorts of things. Oh, sorry. Go ahead. I just wanted to ask you why you haven't waived your right to sue by instead of coming right to court, instead you went ahead and signed the agreement and got your building permit and did your construction? Well, there is no federal rule that requires a property owner to choose between suing and pursuing the construction under the permit. And we would urge the court not to adopt a rule that would put extremely severe burdens on property owners and essentially allow the government that has infinite time and resources to twist the arm of a property owner to sit back and wait and make a property owner choose between constructing and waiving an essential fundamental constitutional right. To do so would not only burden property owners, but it would burden governments also, because it would say to governments, no, you have to wait now because the property owner is going to pursue his legal remedies prior to. I mean, you've come to court with all these other burdens you're talking about, but I'm just puzzled why when push comes to shove you didn't go get a preliminary injunction against this. Instead, you went ahead, signed the agreement, got your building permit, did your construction, and then afterwards come out and complain. It's a little bit messier than that because after the agreement was signed but before it was delivered, the city then engaged or invited the Griswolds to engage in negotiations that took several months over the terms to be included in that waiver. So the Griswolds, in good faith, pursued an attempt to negotiate the terms of this thing until May of 2005 when they were granted the permit. I'd like to reserve the rest of my time. Counsel, I have one more question I need to ask you. When they signed their agreement in June, or not when they signed their agreement in June, I misspoke. When they got their notice in June, it had a checkmark in the box that the improvements may be deferred pursuant to Municipal Code Section 18.40. Then I looked at 18.40, and at 18.40-090, it says that the conditions of deferral include that the property owner will construct the improvement at such time as an improvement district is adopted. It looks as though the critical parts of this waiver of the right to vote are included, if I'm reading it right, and I don't know if I am. So it looks as though they don't need to wait for the agreement to know they're going to be stuck. All they have to do is follow the reference in the notice they got in June to know that they're going to be stuck for the money. May I answer? Please do. Your Honor, that goes to the question of when the injury accrued and when the statute of limitations began. And if you look at the actual checklist, which the district court did not actually have that before at the time of the hearing. I think I'm looking at this ER 26. 25 and 26. If you look at that document, it actually lists four different possibilities. And we don't know, we have no idea when that box there was checked. As I said, the discovery hasn't been completed. We know on page 23 that the final signature on this came in May of 2005, as we said. So it's possible that the box was checked in May of 2005, which is what we argue. But if you look at that. I'm looking at 23, and it says 6-16-04. If you look at page 23, it says it's the city of Carlsbad cover sheet for this planning checklist. And in the middle it says engineering authorization to issue building permits. And it's been signed May 13, 2005. You're saying this box may not have been checked until 05. It is very possible. Now, what we do know is that those four items there, one of them is public improvements are required as followed, and that's left blank. And then item two says construction may be deferred, but you have to submit information and the city will prepare the agreement. Then item four actually says no public improvements required. So this is simply a notification that there are these four alternatives, which one of which will be applied later. We don't know. And we don't know when any of this was finalized except for May of 2005 when the building permit was granted. Thank you, Your Honor. Okay. Thank you, Mr. Sandefur. Mr. Haggerty. May it please the Court. Sean Haggerty for defendant Annapelle, City of Carlsbad. I'm going to focus on the nature of the questions. This is either a property rights case, in which case the matter is time barred, with the operative decision being June 16th of 2004 when the plaintiffs were notified that the ordinance applied to them. Everything flows. Do we know if this box was checked in 2004 or 2005 on ER 26? Yes. There are two pieces of evidence in the record that demonstrate that it was provided in June of 2004. The one that you're referring to in the back of that section, there's an indication that it was first provided in June of 2004 to the plaintiffs. The front sheet does say, as your opposing counsel mentioned, the date at the top is 04, which is what had caught my eye. And then he directed my attention in response to my question to the middle of the page where it says May 13, 05. When was the box checked? On the record on page 32, there's a series of dates. And there's the June 16th, 2004 date, demonstrating that that's when the city responded to the plaintiff with this checklist. And then there's confirming evidence of that in the record, Your Honor, in Exhibit 4 to the complaint, which is a subsequent letter from the city confirming, again, that that date of June 16th, 2004, was the date when the plaintiffs were notified that the ordinance applied to them. And I don't think it's – Exhibit 4 to the complaint is where? It's in the record, Your Honor, at tab 5, page 75. The tab 5 of my excerpts here just shows the docket sheet. I'm sorry. My tab 5, Your Honor, it's page 75. It's a June 10, 2005 letter from the deputy city engineer for the city of Carlsbad. Let's – okay. And where should I look there? It reflects that on June 16th, 2004, the plaintiffs were notified of the requirements of the ordinance. And that document was attached to the complaint and therefore was appropriate before the district court on the motion to dismiss. I see. So if it's a property rights case, it's time barred with that being the operative date because the ordinance itself sets forth what needs to occur once a mechanical calculation is performed, and that was performed by that time and the plaintiffs knew of it at that time. If it's a voting rights case, which we don't believe it is, we do believe that this is an attempt to create a novel theory based upon a land use case that really should have been brought, if at all, in state court at the time of the application before the permit was issued. But if it is a voting rights case, it is not right because it is unclear whether this process will ever go forward. Many things do need to happen, as the record reflects, before this would ever occur. So if it's characterized in – I'm not sure I understand the process. In the city of Fairbanks, the city has many plans that never get carried out because they never get the money, and they often change before the next plan is made up. However, there are other kinds of plans that are pretty routine. For example, the electric utility, once there are a certain number of houses in an area, they put in a line, and I don't know whether this is the sort of thing that can really be expected to occur or not, or if I can tell. It's unclear whether it will occur. And I think to understand that, you need to go back to the process. The process is someone applies for a permit. There's a calculation done. If you exceed a certain threshold that's been set by the city council in an ordinance, if you exceed that threshold, you either need to do the public improvements that are required at the time you do your project, or you could defer through this NIA process, or you could challenge the requirements and go to city council and appeal to them and say, we don't think we need to do these things. But what occurs then is that that obligation is deferred. Could you even pay the money and be done with it? I'm thinking – Yes, you could pay. How would they know how much to pay if they're not burying the lines yet? There is an estimate that's contained in the NIA of the actual cost for the public improvements that are required. And then there's additional costs. So what would the dollar figure be here? $53,000 for the improvements themselves. And then there are additional costs, if you look at the chart, related to the assessment process, which may occur later in terms of doing the design for the district, processing the assessment, which needs to be processed. So there are additional costs, but the physical improvements themselves were estimated to be $53,000. You argued that we should affirm or we could affirm on an alternate ground that there was waiver. Can you go into that a little bit? Yes, Your Honor. There's two grounds for waiver in our opinion. One is the concept that is fundamental to Lande's Law, that if you accept a permit without challenging its conditions and accept the benefits of that permit, then you cannot later turn around and challenge the conditions of the permit. And we've cited a number of cases, but the McDougall case, which is 19 Cal 3, 505, summarizes that line of cases very well. Would that apply if you put unconstitutional limits on the permit, unconditional conditions? Well, the appropriate way to challenge that would be to bring an action immediately in state court. We don't believe that this is an unconstitutional condition. We believe that we have the police power to require this condition. We also believe we have the ability to defer the performance of the condition. But if you're arguing that there are unconstitutional conditions placed on the land use permit, the case law is very clear in our opinion that you're talking about an inverse condemnation type situation where the government's overreached and is exacting too much property in exchange for the benefits, and the law is you go into state court, you seek your state court remedies, and if and only if those remedies aren't satisfactory, do you come over to federal court and seek your rights there. So that's one waiver theory. The other one is the document itself. I mean, the document itself is specifically designed to say, you know, do the improvements now or enter into this agreement to defer them, but because the city has an obligation to make sure that if, you know, that that condition is performed, maybe at some point that you have this waiver obligation in the document itself. So there's both a land use practical waiver theory and then there's just a contractual waiver theory. And in each case, I mean, the timing I think is important to remember here because the plaintiff signed the agreement and actually signed it in December of 2004, sort of put it on the shelf for a bit, engaged in a series of letters, sent in to the deputy city attorney, eventually then pulled the permit and went forward with the NIA in place, constructed the project, got final occupancy, which would not have been allowed under the ordinance if the NIA was not in place. There's a specific provision in the ordinance to say we don't grant the permit, and even if the permit has been granted, we can't get final occupancy until we know that that's in place. So we got final occupancy and then five months later brought this action. Let me ask you something about rightness. The theory is, for it not being right, that there may never be an election. You don't know what will be at stake. You don't know if there will ever be such a district. It's fairly contingent. However, the loss of the right to vote, if there is one, is not contingent. And I would think that it would have at least some effect on the value of the property, just as if you have ordinary common stock in a corporation and for some reason it's turned into non-voting stock, your stock is worth a little less. Even though you've never sent in proxy statements before, you have no intent to vote, you don't know what will come up, you don't know if anything will come up. A couple of responses. I don't believe that the right to vote, the loss of the right to vote is final at all, even though there is the agreement. There are scenarios you could play out where a vote could be made. How do you mean? I thought it was final. No, it's not final, Your Honor. I mean, there are things that need to happen before you even get to the point that there's a vote. But there is the dollar limit in the ---- How could you vote even though you've signed it away? Well, if the assessment exceeds the amount that's set forth in the NIA, for example, if the city believed that there was a special benefit to this property that was unrelated to the building permit. That's like turning your voting stock into non-voting stock with some exceptions. Well, I mean, there could be a situation where a vote could be cast, and we just don't know, we don't have those facts before us. But I don't think it's ---- What about my hypo? Would there be a right claim when the voting stock was turned into non-voting stock? I think the problem with that analysis is that it converts the voting situation back into a property rights situation. And, one, I think that's time-barred. And, two, you need to look at it in the context of the increased value of the property that resulted from the issuance of the permit. And we're talking about, you know, it's a single-family home, so it's not this huge situation. But it's essentially a 14,000-square-foot addition to a home with two new bedrooms and a bathroom, a family room. And so there was value provided based upon the permit. So you can't really compare that without looking at the value that was provided through the application itself. So thank you very much. Okay. Anybody have anything further for us? If you want to give them 30 seconds, go ahead. I don't. I don't. But if you have any questions, I will. No, I guess not. Thank you very much. Okay. We have no questions. And every ---- and time has expired. So thank you very much for your argument. The matter just submitted will ---- just argued will be submitted. And next to your argument in Mitchellhurst County, Los Angeles.
judges: Rymer, Kleinfeld, Silverman